UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY GLIELMI and PATRICIA GLIELMI, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 09-5734 |
| v. | : : | **OPINION** |
| THE RAYMOND CORPORATION and ARBOR MATERIAL HANDLING, INC. | : : : | |
| Defendants. | : : | |

**Appearances**:

GARY W. BOGUSKI
TAYLOR & BOGUSKI LLC
LARCHMONT LAW & PROFESSIONAL CENTER
199 SIXTH AVENUE
P.O. BOX 227
MT. LAUREL, NJ 08054

ROBERT M. CAPLAN
WHITE AND WILLIAMS LLP
1650 MARKET STREET
ONE LIBERTY PLACE, SUITE 1800
PHILADELPHIA, PA 19103
*Attorneys for plaintiffs*

FRANCIS J. GREY , JR.
WILLIAM J. RICCI
LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY, PC
1300 ROUTE 73
SUITE 307
MOUNT LAUREL, NJ 08054
*Attorneys for defendants*

**HILLMAN, District Judge**

This is a personal injury case that occurred while plaintiff Anthony Glielmi[1] was operating a forklift during a

---

[1] Plaintiff used singularly refers to Anthony Glielmi.

training exercise during work hours seriously injuring his right arm.  Defendants filed two summary judgment motions, one arguing that plaintiffs' claims should be dismissed because they owed no duty to plaintiff, and the other arguing that plaintiff's expert's opinion is unreliable.  For reasons set forth below, defendants' motion regarding the duty owed to plaintiffs will be denied, and their motion regarding plaintiffs' expert will be granted in part and denied in part.

## I. JURISDICTION

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).  Plaintiffs are citizens of New Jersey; defendant The Raymond Corporation is a New York corporation with its principal place of business in New York; and defendant Arbor Material Handling, Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania.  The amount in controversy is alleged to exceed $75,000.00.

## II. BACKGROUND

Plaintiff Anthony Glielmi was an employee of Superior Pool Products, a division of Pool Corporation ("Superior"), in Blackwood, New Jersey.  Superior had decided to increase the capacity of its warehouse by "re-racking" or narrowing the distance between the warehouse's racks.  Since forklifts operated by a driver sitting down could no longer make ninety degree turns

in the re-racked area, Superior purchased a stand-up forklift from The Raymond Corporation ("Raymond"). Raymond forwarded the sales order to its dealer, defendant Arbor Materials Handling, Inc. ("Arbor").

The purchased stand-up forklift was not ready by the delivery date and, therefore, on February 6, 2008, Arbor delivered a rental stand-up forklift to Superior. On that day, Arbor employees Jennifer Clay and Bruce Marshall arrived at Superior to provide assistance with the rental. Clay and Marshall gathered employees who were to be trained on the stand-up forklift into an area of the warehouse. The area in the warehouse for the demonstration was about sixteen to twenty feet wide. Marshall thought the area was too small for the demonstration and, before it began, Marshall asked Superior branch manager Russell Bacon if there was a bigger area they could use. Bacon said there was not. Marshall testified that he would have preferred an area about thirty by thirty-five feet. Another Superior employee, Graziano Mastrobuono, suggested to Marshall that the demonstration be given at the loading dock but did not receive a response.

Before the demonstration started, plaintiff left the area to unload a truck which had arrived. While plaintiff was unloading the truck, Marshall first demonstrated the forklift controls with the machine turned off and then turned it on to

3

demonstrate steering and operation of the so-called "dead man's pedal." Marshall then asked the Superior employees if anyone would like to try using the forklift. Mastrobuono got up on the forklift and was able to work the controls without incident but stated that the controls were "sensitive."

Plaintiff returned to the demonstration and Marshall told him to try out the forklift. Plaintiff responded that he had just arrived, that he did not hear Marshall's demonstration, and that he was apprehensive about getting on it. Marshall responded that there was "nothing to it" and that he would show him what to do. Plaintiff got on the forklift and while driving it, lost control and backed into a rack, pinning his arm against the rack and crushing his forearm.

Plaintiff alleges that as a result of the injury to his forearm, he is in constant pain and needs his wife to help him shower, dress, buckle his shoes, and cut his food. Plaintiff states that if he had health insurance[2] he would see a psychiatrist because he feels down all the time. Plaintiffs brought claims of negligence, breach of warranty, strict liability, and loss of consortium. In support of their claims, plaintiffs rely on the opinion of Nicholas J. Barta as their

---

[2] Plaintiff states that he has been terminated by Superior and no longer has health benefits through his employer. Plaintiff states he currently collects Social Security Disability benefits.

4

liability expert.

Defendants filed motions for summary judgment arguing that they owed no duty to plaintiff and, therefore, cannot be liable. Defendants also argue that Barta's expert opinion should be excluded because it is not reliable and, therefore, plaintiffs cannot prove their claims.

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **B.**    **Duty Owed by Defendants**

Defendants argue that they are not responsible for plaintiff's injuries because Occupational Safety and Health Administration (OSHA) regulations place responsibility for employee safety on the employer.  Defendants maintain that they had no duty to train plaintiff on use of the forklift.

Pursuant to OSHA regulations, it is the employer's duty

6

to provide training for operators of powered industrial trucks. See 29 C.F.R. § 1910.178.[3]  The training itself, however, need not be performed by the employer, but can be done by a third-party.  See Shoemake v. Rental Service Corp., No. 06-426, 2008 WL 62238, at *4 (S.D.Miss. Jan. 3, 2008) ("OSHA does not require that an employer instruct its employees directly, but instead permits third parties to conduct the training.") (citing "Powered Industrial Truck Operator Training; Final Rule," 63 Fed.Reg. 66237-66274 (Dec. 1, 1998)).[4]

On the same day Arbor delivered the rental stand-up forklift to Superior, two of its employees were present to conduct an "orientation."  Defendants place much emphasis and use on the word "orientation" seemingly as to avoid using the term "training," but in this context, it makes little difference.  The Superior employees were assembled in the warehouse where the Arbor employee demonstrated how to operate the forklift and observed the employees operating the forklift for the first time.  There is no dispute that pursuant to OSHA regulations, training

---

[3] "The employer shall ensure that each powered industrial truck operator is competent to operate a powered industrial truck safely, as demonstrated by the successful completion of the training and evaluation specified in this paragraph (l)."  29 C.F.R. § 1910.178(l)(1)(I).

[4] That regulation states in pertinent part, "OSHA did not, however, specify that the training must be conducted by the employer, a supervisor, or any other particular person, but only that the training be conducted by a person who is qualified to do so."  See 63 Fed.Reg. 66238-01, Section VII.1.

on the forklift was required. There is no dispute that no Superior employee had any experience operating stand-up forklifts. There is no dispute that defendants in general provided training for its customers for the stand-up forklift.

In addition, plaintiff testified that he believed Clay and Marshall, Arbor's representatives, were providing training on the forklift. Other Superior employees thought the same. Eric Peters, Superior's operations manager, and Russell Bacon, Superior's branch manager testified that the Arbor representatives were there to provide training and certification. Plaintiff's co-workers Graziano Mastrobuono and Zachary Knapp both testified that they thought the Arbor representatives were providing training. Diane Fox, Superior's safety coordinator, wrote on the employer incident report that at the time of injury, plaintiff was "training on new forklift." Not only was Superior under the distinct impression that the Arbor representatives provided training on the day of the accident, but Arbor's Invoice had typed in block letters in the center of the invoice "HANDS ON TRAINING/ACCIDENT."

Given the above facts, a reasonable juror could conclude that Arbor representatives undertook the task of providing some measure of training on the stand-up forklift to plaintiff on the day of the accident. Since defendants provided training to the Superior employees, the issue raised is whether

8

it was reasonably foreseeable that plaintiff might be injured during the training.  Plaintiffs allege that before conducting the training, Marshall asked if there was a bigger area available because he felt the space inside the warehouse was too small.  He was told by Russell Bacon, Superior's Branch Manager, that it was the "best they could do."  Plaintiffs also state that when plaintiff's co-worker tested the forklift, he stated to Marshall that the controls were "sensitive."  Plaintiffs also point out that plaintiff had no prior experience operating the stand-up forklift and expressed his hesitation before testing it.

  Based on these circumstances, plaintiffs have alleged sufficient material facts to go to a jury on the question of whether it was foreseeable that plaintiff would become injured.  See Alloway v. Bradlees, Inc., 157 N.J. 221, 230, 723 A.2d 960, 964 (N.J. 1999) ("A major consideration in the determination of the existence of a duty of reasonable care under 'general negligence principles' is the foreseeability of the risk of injury.") (citing Carey v. Lovett, 132 N.J. 44, 57, 622 A.2d 1279 (1993); Weinberg v. Dinger, 106 N.J. 469, 485, 524 A.2d 366 (1987)); Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182, 194, 638 A.2d 1288, 1294 (N.J. 1994) ("Subsumed in the concept of foreseeability are many of the concerns we acknowledge as relevant to the imposition of a duty: the relationship between the plaintiff and the tortfeasor, the

nature of the risk, and the ability and opportunity to exercise care."). Therefore, defendants' motion for summary judgment on grounds that they owed no duty to plaintiffs will be denied.

### C.   Liability of Raymond

Even if they owed a duty to plaintiff, defendant Raymond contends it cannot be held liable because no Raymond personnel were present for the training, had a role in defining its scope, or selected the location. Defendants argue that Raymond could not have possibly foreseen a risk to plaintiff and, therefore, plaintiff cannot establish a duty owed. Plaintiffs respond that at all relevant times, Arbor acted as Raymond's agent and, therefore, Arbor's liability may be imputed to Raymond.

Under New Jersey law, "[a]n agency relationship is created when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." New Jersey Lawyers' Fund for Client Protection v. Stewart Title Guar. Co., 203 N.J. 208, 220, 1 A.3d 632, 639 (N.J. 2010) (citing Restatement (Third) of Agency § 1.01 (2006) (internal quotation marks omitted)). "Generally, an agent may only bind his principal for such acts that 'are within his actual or apparent authority.'" Id. (citing Carlson v. Hannah, 6 N.J. 202, 212, 78

A.2d 83 (1951)).  "A court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent."  Id. (citing Sears Mortg. Corp. v. Rose, 134 N.J. 326, 338, 634 A.2d 74, 80 (N.J. 1993)).

Here, Superior ordered the stand-up forklift from Raymond.  Raymond contacted Arbor to provide delivery and services for the forklift.  Superior initiated no contact with Arbor.  When delivery of the forklift was delayed, Superior thought it was dealing with Raymond for the rental forklift.  In this situation, Raymond, as manufacturer of the forklift, was the principal, and Arbor, as dealer, was the agent who provided rentals and training for the equipment. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 374, 161 A.2d 69 (N.J. 1960) (courts must look to conduct to decide factual relationship in determining agency relationship).  Arbor acted with clear authority from Raymond.  Accordingly, an agency relationship existed between Raymond and Arbor.

### D.  **Plaintiffs' Expert**

In their second motion for summary judgment, defendants argue that plaintiffs' expert should not be permitted to testify because his opinion is not reliable.  Specifically, defendants argue that plaintiffs' expert performed no testing to support his opinion; his opinion advocates for the misuse of the product; his

11

opinion advocates for conducting an orientation for untrained operators on an active loading dock; and because the standards relied upon are inapplicable.  For reasons set forth below, defendants' motion will be granted in part and denied in part.

**1.   Reliability**

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The three requirements outlined in Rule 702 are referred to as: qualification, reliability and fit.  Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (citing Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)).

Defendants argue that plaintiffs' expert does not meet the second requirement of reliability.  Factors the Court should consider in determining whether an expert's opinion is reliable are:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error;
> (4) the existence and maintenance of standards controlling the technique's operation;

12

>          (5) whether the method is generally accepted;
>          (6) the relationship of the technique to methods which have been established to be reliable;
>          (7) the qualifications of the expert witness testifying based on the methodology; and
>          (8) the non-judicial uses.

Schneider, 320 F.3d at 405 (citing Paoli II, 35 F.3d at 742 n. 8, citing Daubert, and United States v. Downing, 753 F.2d 1224 (3d Cir. 1985)).  These factors "are neither exhaustive nor applicable in every case."  Pineda v. Ford Motor Co., 520 F.3d 237, 248 (3d Cir 2008) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. at 137, 151, 119 S.Ct. 1167 ("noting that Daubert itself 'made clear that its list of factors was meant to be helpful, not definitive'") (other citations omitted)).

     The trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  Kumho Tire, 526 U.S. at 152, 119 S.Ct. at 1176; see Viking Yacht Co. v. Composites One LLC, 613 F.Supp.2d 626, 633 (D.N.J. 2009) ("an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing Pineda, 520 F.3d at 247, quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (internal quotation marks omitted)).  The Third Circuit has cautioned that "the standard for determining reliability 'is not that high,' [] even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702."  In re TMI Litigation, 193 F.3d 613, 665 (3d Cir. 1999).

Defendants argue that Barta's opinion is unreliable because he performed no testing. Although a testable hypothesis is one factor a Court should consider in assessing the reliability of an expert, testing is not always applicable. See Jaasma v. Shell Oil Co., 412 F.3d 501, 514 (3d Cir. 2005) (rejecting argument that expert report should be excluded because it was not based on independent testing and finding expert opinion reliable); see also Clay v. Ford Motor Co., 215 F.3d 663, 668-69 (6th Cir. 2000) ("The district court, in its discretion, could have decided that Richardson's failure to test his theories went to the weight of his testimony regarding defects in the Bronco II, not to its admissibility."); Jacobs v. Tricam Indus., Inc., --- F.Supp.2d ----, No. 10-11469, 2011 WL 3957667, at *4 (E.D.Mich. Sept.8, 2011) (finding that "testing is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence."). The Daubert factors do not constitute a definitive checklist or test. Rather, the "gatekeeping inquiry must be 'tied to the facts' of a particular case," depending on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150. The admissibility of his testing relies upon whether his data "... is of a type reasonably relied on by experts in the field ... [and] whether there are good grounds to rely on this data to draw the conclusion reached by

14

the expert." Jaasma, 412 F.3d at 514 (citing In re TMI Litigation, 193 F.3d at 697; Fed.R.Evid. 703).

There is no dispute that plaintiff's expert is qualified to offer an opinion as to the safety and standard of care for forklift operations. Barta has trained over 4000 forklift trainers and over 5000 forklift operators, and developed safety programs. That Barta performed no testing in this case does not render his opinion regarding the safety of the training location inadmissible because independent testing is not always required. This is not a manufacturing or design defect case. The issue that plaintiff's expert opines on is, simply enough, whether the room used to conduct the training was large enough. Barta states that the room was too small and created a safety hazard for training purposes. Based on Barta's experience and visual inspection of the warehouse, the requisite reliability is present and Barta's expert opinion as to the safety of the location for the training will be admitted. See Linkstrom v. Golden T. Farms, 883 F.2d 269, 271-72 (3d Cir. 1989) (permitting expert to testify on the practice of farm laborers and matters of farm safety regarding migrant worker who fell off flat bed truck). Defendants, of course, are free to cross-examine Barta on his opinion, the experience the underlies it, and the justification for it. And the jury will be free to disregard it if they find it wanting. See Daubert 509 U.S. at 596 ("Vigorous

cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (citing Rock v. Arkansas, 483 U.S. 44, 61, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987)).

### 2.  Opinion on Alternate Locations

We do find one aspect of Barta's proffered testimony problematic.  As part of his opinion that the training area was too small, Barta suggests that the training should have been held either outside of the warehouse or on the loading dock. Defendants argue that neither location is feasible.  With regard to conducting the training outside, defendants state that the manual for the stand-up forklift expressly states "This lift truck is designed for indoor use only.  Do not use this lift truck outside."  The reason for the warning is that outside surfaces are often uneven and create a risk of a tip-over accident.  Plaintiffs argue that defendants are not entitled to set the industry standard of care and that a jury should be permitted to weigh defendants' argument against their expert's.

As it relates to an opinion regarding outdoor training, this Court disagrees.  Plaintiffs have not presented any expert opinion that the outside area near Superior's warehouse was

16

appropriate for training.[5]  The warning against using the forklift outside was borne out of concern that the forklift would tip over on uneven surfaces.  There is no report regarding the evenness of the proposed outside area.  Moreover, there is no indication that Arbor's representatives would have been able to make such a determination on the day of training.  Rather, the evidence suggests that conducting the training outside would have been a misuse of the product and would have created a risk of the stand-up forklift tipping over.  Under these circumstances it is difficult to understand how Barta's proffered opinion on training outside the building could be helpful to the jury and every reason to believe it would be confusing given the express bar on outside use.  Accordingly, Barta's expert opinion regarding the use of an outside area to conduct the training will not be permitted.

Barta's opinion regarding the loading dock as an alternative training area, however, is admissible.  Although Barta agreed in deposition that an active dock is one of the most dangerous places for using a stand-up forklift, it is not clear that the dock was always "active."  At about the time that the training began, a truck pulled up and plaintiff left to unload the truck.  During that time, it appears that the dock was

---

[5]  We do not understand Plaintiffs to be offering Barta as qualified to give an opinion as to the use of the subject machine on whatever surfaces may have existed outside the warehouse.

17

"active." No facts were presented, however, that the dock was in a state of constant activity so that training could have occurred when there was no unloading of trucks. Even if the dock was active and created a safety risk, this is an area that goes to the weight of Barta's testimony rather than its admissibility. See Campbell v. Metropolitan Property and Casualty Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001) (gaps or inconsistencies in expert's reasoning go weight of the evidence not admissibility); Voilas v. General Motors Corp., 73 F.Supp.2d 452, 459 (D.N.J. 1999) (finding that challenge to expert's decision to reject certain options goes to the weight of expert's opinion rather than admissibility). Barta opines that the dock would have been the safer choice. Whether it was safer, or the lesser of two evils, is a question for the jury. Accordingly, Barta's opinion regarding use of the loading dock as an alternative area to conduct the training will be permitted.

### 3.   OSHA Standard

Finally, defendants argue that Barta's reliance on OSHA 1910.178 which provides that "[t]rainees may operate a powered industrial truck where such operation does not endanger the trainee or other employees" is inapplicable because Barta conceded that the standard creates a non-delegable duty that applies to employers only. A review of Barta's deposition testimony actually leads to the opposite conclusion:

18

> Q. You agree with me, sir, that pursuant to 1910.178, the OSHA law, the employer has a non-delegable duty to train individuals to operate the forklifts that are on their premises?
> ...
> A. I'm not sure I would agree with that.
> Q. In what sense do you not agree with that?
> A. I believe that the employer can use an outside source to do that training for them. ...

Clearly, Barta believed that the employer can delegate its duty to train employees to third parties. Furthermore, as we noted previously, nothing in OSHA regulations bars such a delegation. Therefore, defendants' request to exclude Barta's testimony as unreliable on this ground is denied.[6]

### IV. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment will be denied, except that plaintiffs' expert will be barred from offering an opinion as to the use of the outdoor space as an alternative area for training.

An appropriate Order shall accompany this Opinion.

                    s/Noel L. Hillman
                    NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated:   March 19, 2012

---

[6] The Court notes that in defendants' brief, they cite to Barta's deposition "at 57" and "at 100" (with no reference to the numbered line on each page). The Court located excerpts from Barta's deposition as defendants' Exhibit H, but it only contained pages 1, 78, 79 and 102. Defendants did not include pages 57 or 100. The Court relied upon plaintiffs' Exhibit D, which included pages 57 and 100 of Barta's deposition.