[Doc. No. 49]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ANTHONY GLIELMI, et al.,

         Plaintiffs,

    v.

THE RAYMOND CORPORATION, et
al.

        Defendants.

Civil No. 09-5734 (RMB/JS)

**MEMORANDUM OPINION AND ORDER**

    This Order addresses whether certain of defendants' proposed
trial exhibits should be barred because they were produced late.
The issue arises in the context of plaintiffs' "Motion to Preclude
Defendants from Submitting into Evidence at Trial the Data,
Photographs and Videotaped Recordings Related to the 1987 and
1999/2000 Off-Dock Tip Testing Conducted by Packer Engineering."[1]
[Doc. No. 49]. The Court received defendants' opposition [Doc. No.
50] and held oral argument. The Court also received the parties'
supplemental submissions [Doc. Nos. 56, 57]. For the reasons to be
discussed plaintiffs' motion is GRANTED.

Background

    This lawsuit arises out of Anthony Glielmi's forklift accident
that occurred on February 6, 2008 while he was in the course and

---

[1] These items are identified as Exhibits D-104, 105, 106,
107, 108 and 109 in the Joint Final Pretrial Order ("JFPTO").

scope of his employment with Superior Pool Products, a division of Pool Corporation ("Superior"). After Superior decided to expand its warehouse area it purchased a stand-up forklift from defendant Raymond Corporation ("Corporation"). Raymond forwarded the sales order to its dealer, defendant Arbor Materials Handling, Inc. ("Arbor"). On February 6, 2008, the purchased forklift was not ready so Arbor delivered a rental stand-up forklift to Superior. While Arbor was showing Superior's employees how to use the forklift plaintiff "tried the machine out," and while using it inside Superior's warehouse, Glielmi lost control, backed into a rack and crushed his arm.

Plaintiffs' lawsuit naming Raymond was removed to federal court on November 10, 2009. Plaintiffs' second amended complaint adding Arbor was filed on June 1, 2010. Fact discovery concluded in November 2010. Plaintiffs produced their expert report prepared by Nicholas J. Barta on January 27, 2011. Defendants deposed Barta on February 25, 2011. Defendants produced their expert reports (Michael Rogers, P.E. and Kenneth Van Hook) on February 26, 2011 and March 3, 2011. Defendants filed motions for summary judgment on June 15, 2011, which were granted in part and denied in part on March 19, 2012. In one of their motions defendants sought to exclude Barta's opinions as to defendants' negligence. The Honorable Noel L. Hillman ruled that plaintiffs' expert, Barta, could testify as to the alleged inadequacy of the location of defendants' training and Glielmi's accident, i.e., the area was too

2

small.  Glielmi v. The Raymond Corporation, C.A. No. 09-5734 (NLH/JS), 2012 U.S. Dist. LEXIS 36397, at *17 (D.N.J. March 19, 2012), recons. den. 2012 U.S. Dist. LEXIS 156548 (D.N.J. Nov. 1, 2012).  Although Barta was barred from testifying as to the use of an outside area to conduct training (id. at *18-19), he was permitted to give an opinion regarding the adequacy of the loading dock as an alternative training area (id. at 18).[2]  The Final Pretrial Conference was held on June 8, 2012.  Defendants' portion of the proposed JFPTO listed the exhibits at issue that plaintiffs had not seen before.  The Court then Ordered defendants to produce the exhibits.  The exhibits were first produced to plaintiffs on June 22, 2012. (Hereinafter referred to as the "exhibits".)

The exhibits generally concern off-dock forklift testing conducted by Packer Engineering ("Packer") in 1987 and 1999/2000.  At the time the tests were conducted defendants' expert, Rogers, worked for Packer.  According to defense counsel Raymond hired Packer to study the extent of injuries that would occur in off-dock forklift accidents.  The exhibits consist of photographs, videotapes and technical data generated from the tests.  The exhibits will be used to support defendants' claim that it would have been dangerous to conduct forklift training in Raymond's dock area.  One reason defendants want to use the exhibits is to quantify the injuries that will occur in an off-dock accident.

_____

[2]Raymond's Motion for Reconsideration was denied on November 1, 2012. [Doc. Nos. 58, 59].

Plaintiffs argue the exhibits should be barred because they were produced late and they will be substantially prejudiced if they are used.  Plaintiffs argue the exhibits came "out of the blue" and they did not have an opportunity to rebut them.  Defendants argue the exhibits are merely "demonstrative" and they are being used to rebut plaintiffs' argument that forklift training should have been conducted on the loading dock.  Defendants also argue that it was only after Judge Hillman's March 19, 2012 summary judgment decision that the case focused on whether Glielmi could or should have been trained on the loading dock.  In addition, defendants argue plaintiffs are not prejudiced because their expert knew about the exhibits from another case that was tried to verdict in January 2011.  In response plaintiff argues their theory of the case never changed and that defendants did not mention they would rely upon off-dock testing until long after discovery ended.  Plaintiffs also argue that if defendants are permitted to use the exhibits they must be given an opportunity to conduct additional discovery to cure the prejudice caused by defendants' late production.  Plaintiffs submit they may have to conduct their own tests, re-depose defendants' experts and possibly retain another expert.

Discussion

The parties do not dispute that the exhibits were not produced until June 22, 2012.  The first question the Court must address is whether the exhibits should have been produced earlier.  If the

4

Court decides plaintiffs' production was late, the next question is whether the exhibits should be barred.

1.   <u>Was Defendants' Production Late?</u>

Based on the Court's reading of plaintiffs' interrogatories and document requests, the Court finds that the exhibits were responsive and should have been identified and produced with defendants' answers served in 2010.  Plaintiffs' March/June 2010 written discovery requested copies of the following documents:

2.   All documents concerning any investigation, study, inspection, test, analysis, or examination, including but not limited to, any hazard analysis, regarding the product or events believed to have been involved in the accident alleged in plaintiffs' Complaint.

. . .

6.   All photographs, videotapes or other depiction of the forklift and its component parts whether made before or after the accident.

7.   All documents or tangible things you intend to use or offer as an exhibit or demonstrative aid at trial or otherwise show the trier of fact.

. . .

24.  All documents or things given to, received from or produced or compiled by any expert witness retained and expected to be called as a witness in this case, relating to the accident giving rise to this lawsuit.

. . .

26.  All documents upon which any expert relied upon or used to form or prepare an opinion or report relating to the accident giving rise to this lawsuit.

. . .

28. All documents relating to any tests, examinations or investigations performed by any expert expected to be called as a witness at trial of this case, relating to the accident giving rise to this lawsuit.

See Plaintiffs' September 26, 2012 Letter Brief ("LB"), Exhibit C (March 19, 2010 Request for Documents to Raymond) and Exhibit D (June 18, 2010 Request for Documents to Arbor).[3]  See also id. Exhibits E and F (Fed. R. Civ. P. 30(b)(6) deposition notices directed to Raymond and Arbor asking for testimony about "[a]ny and all testing performed on the completed forklift" and "[a]ll design and/or safety considerations taken in the design of the forklift."). The Court finds the exhibits should have been produced in response to the foregoing document requests.[4]

In addition to being responsive to plaintiffs' document requests defendants' exhibits should have been identified in their Rule 26(a) disclosures. Rule 26(a)(1)(A)(ii) requires parties to provide, without awaiting a discovery request, a "copy - or a description by category and location - of all documents,

_____

[3]Plaintiffs' acknowledgment that they did not specifically ask for the exhibits is understandable since they did not know about the tests identified therein.

[4]Since Raymond hired Packer to perform the off-dock tip testing in 1987 and 1999/2000, it obviously knew the testing occurred.  The Court infers Packer had copies of the test results and photographs at issue.  Even if Raymond did not have physical possession of the exhibits, Packer and/or Barta had copies that Raymond could have requested.  Raymond's right to obtain the documents on demand establishes possession, custody or control of the documents under Rule 34.  Haskins v. First American Title Ins. Co., C.A. No. 10-5044 (RMB/JS), 2012 WL 5183908, at *2-3 (D.N.J. Oct. 18, 2012).

electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Defendants seek to use the exhibits to support their defense that they trained Glielmi properly and that it was not appropriate to train Glielmi on the loading dock. Thus, since defendants seek to use the documents to support their defense, the documents should have been identified in defendants' Rule 26 disclosures.

A main focus of defendants' argument is that the issue of whether testing should have been done on the loading dock did not become significant until after Judge Hillman's March 19, 2012 ruling on their summary judgment motions. During oral argument on the present motion defendants argued the case did not focus on loading dock testing until after Judge Hillman's ruling. This argument is rejected. At least as early as January 27, 2011, defendants were on notice that defendants would argue that Glielmi should have been trained on the loading dock.[5] Barta's expert report specifically addresses the loading dock issue and states:

> The Raymond 7400 standup forklift is a difficult forklift
> to learn to operate.

---

[5] The Court suspects, but is not certain, that plaintiffs' contention was known before January, 2011, even before Barta's report was produced. (Defendants have not argued Barta's opinion was a surprise to them.) However, plaintiffs did not provide evidence to this effect. The Court finds that January 27, 2011, the date Barta's report was produced, is the latest date defendants first learned of plaintiffs' contention.

...

With the risks associated in learning to operate the Raymond standup 7400 forklift, it is imperative that the new operator have enough room to learn how to control the forklift without taking the risk of injuring others, or himself.

...

The dock (where Mr. Glielmi was unloading the truck) is a much bigger than the area Mr. Marshall [Arbor] chose, and Graziano Mastrobuono [Superior] suggested to Mr. Marshall that maybe they should do the training on the larger dock area.  Mr. Marshall did not follow that advice.  Mr. Marshall could have used the large dock area, even it that meant waiting until the truck was unloaded, or to use part of the dock, while the truck was being unloaded.

...

The risk of doing the training in this small area was foreseeable; in fact, Mr. Marshall was uncomfortable with the small area.  The risk of driving backwards under a load beam was also foreseeable, and the load beams were present in this small area.

See July 20, 2012 LB, Exhibit C at 4-6 (emphasis supplied).

Defendant's expert, Rogers, specifically addressed plaintiffs'

loading dock contentions:

The area chosen for the forklift orientation was the best option available at this facility and of sufficient size to allow this type of activity to be conducted safely. Based on my inspection of the facility, there were only two areas within the warehouse large enough to allow untrained operators to safely drive the forklift. The area in which the accident occurred was one and the other was over near the loading dock. However, witness testimony indicates that a truck had arrived which needed to be unloaded and that Mr. Glielmi left the orientation to unload this trailer.  Conducting an orientation in an area where a trailer was actively being unloaded is not a safe thing and furthermore, having untrained operators driving a lift truck in the vicinity of loading docks with the associated hazard of the lift truck falling off the loading dock should never be done.  In addition, this

> orientation could not be done outside because the lift
> truck is not designed to be used outdoors on an uneven
> parking lot.  Operating the lift truck on anything other
> than a flat level surface is unsafe and contrary to the
> intended use of the lift truck.

See Defendants' October 2, 2012 LB, Doc. No. 57-1 at 8 (emphasis

supplied).[6]  Defendants' second expert also specifically addressed

the loading dock issue:

> The area that was provided by Superior Pool was
> sufficient and safe for the purpose of the orientation.
> Other areas that would have created additional hazards
> during the orientation at the facilities would have been:
> around an active dock area, around the area where the
> rack was being relocated, or the isle ways.

Id. at Doc. No. 57-2 at 4.

Plaintiffs had a duty to identify the exhibits in their

written discovery answers and Rule 26 disclosures.  Even giving

defendants the benefit of every doubt, meaning the exhibits were

not requested in discovery and did not have to be disclosed

pursuant to Rule 26(a), the exhibits should have been disclosed

soon after January 27, 2011.  By no later than that date defendants

were on specific notice that plaintiffs would argue Glielmi's

forklift training should have been done on the loading dock.

Pursuant to Rule 26(e)(1)(A) defendants had a duty to supplement

---

[6]Defendants acknowledge the loading dock issue was
identified in Barta's January 27, 2011 report and February 25,
2011 deposition.  They also acknowledge their experts, Rogers and
Van Hook, addressed the contention in their March 3, 2011 reports
and in their depositions conducted on May 11 and 12, 2011.  July
27, 2012, LB at 2.

their disclosures which were incomplete.[7]  Further, the exhibits should have been disclosed when defendants produced their expert reports. Rule 26(a)(2)(B) requires an expert to identify all facts and data considered in forming his opinions and the exhibits that will be used to summarize or support his opinions.  It is apparent, therefore, that defendants were under a duty to identify and produce the exhibits long before June 22, 2012.[8]  This being the case the Court must address whether the exhibits should be barred because of their late production.

    2.   Should Defendants' Exhibits be Barred?

    Pursuant to Rule 37(c) if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use the information at trial unless the failure was "substantially justified or is harmless."   Id.  Substantial justification is defined as:

        justification to a degree that could satisfy a reasonable
        person that parties could differ as to whether the party
        was required to comply with the disclosure request. The
        proponent's position must have a reasonable basis in law
        and fact.   The test is satisfied if there exists a
        genuine dispute concerning compliance.

D&D Associates, Inc. v. Board of Educ. of North Plainfield, No. 03-

_____

    [7]Supplementation is not required where the additional information "has not otherwise been made known to the other parties during the discovery process or in writing."  Rule 26(e)(1)(A).  As will be discussed infra, even if Barta knew about the exhibits from another case this did not excuse defendants' duty to supplement.

    [8]As discussed, the exhibits were responsive to discovery produced in 2010.  Also, soon after January 27, 2011, the exhibits should have been disclosed pursuant to Rule 26.

1026 (MLC), 2006 WL 1644742, at *4 (D.N.J. June 8, 2006) (quoting Fitz, Inc. v. Ralph Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J. 1997)).  A failure to disclose is considered harmless "when there is no prejudice to the party entitled to disclosure." Id. (citation omitted).

Defendants' failure to produce the exhibits before June 22, 2012 was not "substantially justified."  Defendants were on specific notice of plaintiffs' loading dock contentions no later than January 27, 2011.  Further, at all relevant times defendants had accessible copies of the exhibits.  Accordingly, there is no justifiable reason why the exhibits were not produced at least as early as January 2011.  As discussed, the Court discounts defendants' argument that they did not realize the significance of the exhibits until after March 12, 2012.  Plaintiffs specifically raised the loading dock issue in their January 2011 expert report. The importance of the issue is demonstrated by the fact that defendants' experts addressed plaintiffs' loading dock opinions one year before Judge Hillman's March 12, 2012 ruling.  Moreover, defendants acknowledgment of the significance of Barta's loading dock contentions is evidenced by the fact they filed a summary judgement motion in June, 2012 seeking to exclude Barta's opinion that "the location chosen for the orientation was not safe." See Defendants' Brief in Support of Motion for Summary Judgment at 3, Doc. No. 31.  It is disingenuous for defendants to argue they did not appreciate the significance of the loading dock issue until

11

March 2012, when the issue was raised in the parties' expert
reports served in January 2011 and March 2011, and in defendants'
June 2011 motion for summary judgment.  Defendants' failure to
produce their test results before June 2012 is even less justified
given the fact they decried Barta because he did not produce test
results to support his opinion.  See id.  Surely defendants knew or
had to have known about the exhibits when they were seeking to
exclude Barta's opinion on the ground he did not rely on tests.

Defendants argue the exhibits came as no surprise to
plaintiffs because Barta knew about them from a completely separate
case that went to verdict in January 2011.  Defendants' argument
has no merit.  The discovery rules were designed in part to
eliminate guesswork at trial.  Parties are no longer required to
guess or speculate about the evidence a party will rely upon.  Non-
privileged responsive information must be produced pursuant to Rule
26 and in response to written discovery.  It is of no moment that
plaintiffs' expert may have known about the exhibits from another
case.  Given that the exhibits were not disclosed or produced in
discovery, plaintiff had no reason to believe they would be used in
this case.  Whatever plaintiffs' expert knew from another case does
not excuse defendants' duty to produce responsive discovery in this
case.

Defendants' late production is not harmless.[9]  The exhibits

---

[9]Defendants argue the exhibits are harmless because they are
"demonstrative."  On top of the fact the Court is not clear what
defendants mean, plaintiffs are not prepared to rebut the

are directed to perhaps the central issue in the case, i.e., where Glielmi should have been trained.  If defendants are permitted to use the exhibits plaintiffs will be denied an opportunity to rebut defendants' evidence. The exhibits are not cumulative of already existing evidence.  Defendants state the exhibits "quantify and predict the injury level if an operator of a stand-up lift truck were to stay with the vehicle in off-dock accidents."  See Defendants' July 27, 2012 LB at 3.  The exhibits attempt to introduce complex technical issues into the case when they have never before been an issue.

Giving plaintiffs an opportunity to fairly rebut defendants' new evidence is not a viable alternative.  In order to rebut the evidence plaintiffs will have to embark on a costly and time consuming endeavor.  Prejudice in this context may include costs spent to force compliance with discovery.  D&D Associates, 2006 WL 1644742, at *4.  See also Ajax Enterprises v. Fay, C.A. No. 04-4539 (NLH), 2007 WL 1456201, at *3 (D.N.J. May 15, 2007)(amendment to introduce new evidence denied where parties would be forced to "incur substantial unnecessary transaction costs because [their opponents] ... want to assert a new ... claim ... virtually on the eve of the Final Pretrial Conference.").  After years of discovery and motion practice plaintiffs should not be required to "jump

---

exhibits through no fault of their own.  Defendants also try and excuse their late production by arguing the exhibits merely rebut plaintiffs' expert.  This does not explain why the defendants produced the exhibits 1½ years after Barta's expert report was served.

through .. belated hoops" because defendants now want to supplement
their experts' disclosures with information that was known to them
for years. Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P., 184
F.R.D. 526, 531 (D.N.J. 1998).  At a minimum, if the exhibits are
used at trial plaintiffs will likely have to depose new fact
witnesses regarding the tests, re-depose plaintiffs' experts, and
consult with existing or new experts.  Plaintiffs then may have to
conduct their own testing and hire a new trial expert.  Aside form
the fact that these efforts will be expensive, they will be time
consuming.  Although a trial date has not yet been set, the case is
ready for trial and can be set as soon as the trial judge is
ready.[10]  If discovery is opened the case will be further delayed,
possibly until late 2013 or even 2014.  Plaintiffs filed their
complaint in state court in October 2009.  The case was removed
shortly thereafter.  Plaintiffs have a right and expectation to go
to trial without further undue delay.[11]  See Ajax Enterprises,
supra, wherein this Court barred the plaintiff from pursuing late
damage claims because plaintiffs' amendment would inevitably open
the door to another round of substantial fact and expert discovery
and depositions, and would likely necessitate the need for a new
round of expert reports.  2007 WL 1456201 at *3.  See also New York

---

[10]The Final Pretrial Order was entered concurrently with
this Order.

[11]Defendants may also be prejudiced because given the age of
the tests (1987 and 1999/2000) it is not known whether all
relevant facts and witnesses regarding the tests can be
identified, located and deposed.

14

<u>v. Hill</u>, 528 U.S. 110, 117 (2000)("Delay can lead to a less accurate outcome as witnesses become unavailable and memories fade"); <u>Golden Quality Ice Cream Co., Inc. v. Deerfield Speciality Papers, Inc., et al.</u>, 87 F.R.D. 53, 56 (E.D. Pa. 1980)("Any plaintiff in the Federal Courts enjoys the right to pursue his case and to vindicate his claim expeditiously."); <u>In re Health Mgmt., Inc.</u>, No. 96-0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 15, 1999)(citation omitted)("The ability of courts to avoid undue delay is essential to assur[e] that justice for all litigants be neither delayed nor impaired.").

The Court recognizes the Third Circuit has expressed an aversion to the exclusion of important evidence. <u>See</u> <u>Love v. Rancocas Hospital</u>, C. A. No. 01-5456 (JEI), 2005 WL 6011252, at *2 (D.N.J. March 31, 2005). In evaluating whether a non-disclosure warrants exclusion the Third Circuit has identified at least four factors to consider: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." <u>Meyers v. Pennypack Home Ownership Assoc.</u>, 559 F.2d 894, 904-05 (3d Cir. 1977). Additional factors to consider are the importance of the proffered evidence, whether the decision to amend to include new evidence is a matter of new strategy or

tactics, the ability to discover the new evidence earlier and the
reason for the late production. See Scopia Mortg. Corp., 184 F.R.D.
at 528-29.    No single factor is dispositive or outcome
determinative.   Rather, the court must consider all relevant
factors.  See Konstantopoulus v. Westvaco Corp., 112 F.3d at 710,
719-21 (3rd Cir 1987).   The party who has failed to disclose
information bears the burden to show that the nondisclosure was
substantially justified or is harmless.   See D&D Associates, 2006
WL 1644742, at *4.  The exclusion of evidence is a matter left to
the trial court's discretion.   Newman v. GHS Osteopathic, Inc.,
Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995)(citation
omitted)("[T]he imposition of sanctions under Rule 37 is a matter
within the discretion of the trial court.").

     As to the first Meyers factor, there is no question plaintiffs
were surprised by the exhibits.   The exhibits were produced 2½
years after the case was filed, long after fact and expert
discovery was completed, and even after defendants' motions for
summary judgment were decided. It is immaterial that plaintiffs'
expert may have known about the exhibits from another case.
Plaintiffs had no reason to believe the exhibits would be used in
this case until June 2012.   In addition, the Court has already
discussed how plaintiffs will be prejudiced if the exhibits are
used.  Unless the Court permits an unwarranted lengthy and costly
extension of discovery, plaintiffs will not have a fair opportunity
to rebut defendants' evidence. See Scopia Mortg. Corp., 184 F.R.D.

at 530-31 (the disruption of the orderly and efficient trial of the case is a ground for excluding evidence).   As to plaintiffs' ability to cure the prejudice, this factor also weighs in favor of plaintiffs.   The prejudice to plaintiffs cannot be cured in a timely and cost-efficient manner.   In order to cure the prejudice to plaintiffs fact and expert discovery must be opened, which will inevitably result in substantial additional transaction costs and delay in a case that is already expensive and old.   The third Meyers factor also favors plaintiffs.   If the exhibits are used it will result in a more complicated and lengthy trial and will inevitably result in a substantial delay in starting trial.   To be sure, the Court finds no evidence of bad faith.   However, the Court is mindful that defendants possessed and knew about the exhibits long before they were produced.   This is not a case where late produced documents were only recently generated or identified.   In any event, sanctions may be imposed even in the absence of bad faith.   See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 240-43 (3d Cir. 2007).   The fact that the exhibits do not appear to be especially important to defendants also favors their exclusion. If the exhibits were important to defendants' case they would have undoubtedly been produced earlier.   Furthermore, defendants' experts did not even rely on Packer's tests when they rendered their reports and were deposed.   In addition, even without the exhibits the Court does not expect defendants will be barred at trial from arguing it would have been dangerous to conduct forklift

17

training on the loading dock.[12]  As to the last relevant factor to
consider, the Court does not suspect the exhibits derive from a new
defense strategy or tactic.   It has never been a secret that
defendants are contending it would have been dangerous to conduct
forklift training on Superior's loading dock.   Albeit, the fact
that defendants are attempting to introduce scientific testimony
regarding the extent of the injuries from loading dock accidents is
new.   In summary, therefore, an analysis of the relevant factors to
consider compels the conclusion that defendants should be barred
from using the exhibits at trial.

Conclusion

     In conclusion, the Court finds that plaintiffs were required
to produce the exhibits in response to defendants' discovery served
in 2010.   Even giving defendants the benefit of every doubt, the
exhibits should have been produced soon after January 27, 2011.
Plaintiffs late production is not substantially justified and is
not harmless.  For the reasons discussed herein, plaintiffs will be
substantially prejudiced if the exhibits are used at trial.
Accordingly, for all the foregoing reasons,

     IT IS HEREBY ORDERED this 17th day of January, 2013, that
plaintiffs' "Motion to Preclude Defendants from Submitting into
Evidence at Trial the Data, Photographs and Videotaped Recordings
Related to the 1987 and 1999/2000 Off-Dock Tip Testing Conducted by
Packer Engineering" is GRANTED; and

---

     [12]Albeit, this is a ruling the trial judge will make.

IT IS FURTHER ORDERED that defendants are barred at trial from using its proposed trial exhibits regarding Packer's off-dock forklift testing in 1987 and 1999/2000 (Exhibits 104, 105, 106, 107, 108 and 109).

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge